**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRING & MULBERRY, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff JANA RABINOWITZ ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant SPRING & MULBERRY, INC. (hereinafter "Defendant").

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Spring & Mulberry with respect to the manufacturing, marketing, and sale of Defendant's chocolates throughout the United States (hereinafter the "Products") which contained *Salmonella*.

2.      Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that the Products are contaminated or are at risk of being contaminated with *Salmonella,* a bacteria can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems, and in some circumstances (even in healthy persons) can result in the bacteria getting into the bloodstream and producing more severe illnesses such as arterial infections (i.e., infected aneurysms) ,endocarditis and arthritis.

1

3.      On January 12, 2026, Defendant released a press release announcing that it initiated a voluntary nationwide recall of its Mint Leaf flavor, date-sweetened chocolate bars due to potential presence of *Salmonella*, and the FDA published the recall on its website on the same day (the "Initial Recall").[1]

4.      Two days later, on January 14, 2026, the Initial Recall was expanded to include seven additional flavors of Defendants chocolate bars to include seven additional flavors produced during the same period on the same equipment (the "Expanded Recall").[2]

5.      *Salmonella* is a leading cause of foodborne illness, hospitalizations, and deaths in the United States and worldwide.[3] Anyone can get a *Salmonella* infection. But some groups of people have an increased chance of infection, and some people may become seriously ill, including children under 5, adults over 65 (or over 50 with underlying medical problems), people who have a weakened immune system, and international travelers.[4]

6.      Consumers who purchased Defendant's Products, such as Plaintiff, reasonably expected that the Products they purchased would be safe for consumption and would not contain, or be at risk of containing, any harmful substances such as *Salmonella.*

7.      Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *Salmonella*. Knowing of the presence of *Salmonella* is material to reasonable consumers. The presence of *Salmonella* was solely within the possession of Defendant, and consumers could only obtain such information by conducting by sending the products off to a laboratory for extensive testing. This omission leads a reasonable

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/spring-mulberry-issues-voluntary-recall-mint-leaf-date-sweetened-chocolate-bar-due-
possible#:~:text=Summary,nationwide%20since%20September%2015%2C%202025.  (last accessed Feb. 17, 2026).
[2] *Id.*
[3] https://www.cdc.gov/salmonella/about/index.html (last accessed Feb. 17, 2026).
[4] *Id.*

consumer to believe they are not purchasing a product with a known bacterium such as *Salmonella* when in fact they are purchasing a product that is indeed contaminated with the dangerous bacterium *Salmonella*.

8.    A representative example of Defendant's lack of disclosure on the Products is depicted below:





Welcome to the land of Spring & Mulberry.
We're exploring a world of sweet
beyond sugar, using fantastic-for-you
ingredients that showcase a depth
of flavor and spectrum of sweetness.

## INGREDIENTS

### Cacao Beans*
### Dates*
### Cacao Butter*
### Vanilla Bean*
### Peppermint Essential Oil*

*ORGANIC

| 72% CACAO | NO ADDED SUGAR |
|-----------|----------------|
| direct-trade | not a low calorie food |

NUTRITION FACTS Servings: 2, **Serv. Size:**
**1/2 BAR (30g)**, Amount Per Serving:
**Calories 160**, Total Fat **13g** (17% DV), Sat.
Fat 8g (40% DV), Trans Fat 0g, **Cholest.**
0mg (0% DV), **Sodium** 0mg (0% DV), **Total**
**Carb.** 13g (5% DV), Fiber 3g (11% DV)
Total Sugars 6g (Incl. 0g Added Sugars
0% DV), **Protein** 2g, Vit. D (0% DV), Calcium
(2% DV), Iron (15% DV), Potas. (4% DV)

MADE IN A FACILITY THAT ALSO HANDLES
TREE NUTS, PEANUTS, MILK, SOY, AND WHEAT

USE BY 03/31/2027

BATCH 025255



850055470217

## SPRING.MULBERRY

DIST. BY SPRING & MULBERRY RALEIGH, NC 27606
MADE IN THE USA

9.      Consumers, such as Plaintiff, trust manufacturers like Defendant to sell products that are safe to consume and are free from known harmful substances, including *Salmonella*.

10.     In fact, Defendant repeatedly highlights the quality of its products, emphasizing that the Products are "ridiculously good for you"[5] and made "using fantastic-for-you ingredients."[6]

11.     The phrases "ridiculously good for you" and "using fantastic-for-you ingredients" would be interpreted by any reasonable consumer as a guarantee that the Products are safe to be consumed.

12.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product–the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for consumption and does not contain any harmful bacteria. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain or are at risk of containing *Salmonella*.

13.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Salmonella*, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention *Salmonella* anywhere on the Products' packaging or labeling.

14.     As set forth below, the Products, such as that manufactured, marketed, and sold by Defendant, containing or at risk of containing *Salmonella* are by no means safe for consumption and thus are entirely worthless.

15.     Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading

---

[5] https://springandmulberry.com (last accessed Feb. 17, 2026).
[6] *See* label.

representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

16.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant also breached and continues to breach its warranties regarding the Products and has been unjustly enriched.

17.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

<u>JURISDICTION AND VENUE</u>

18.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendant Spring & Mulberry, Inc. is a Delaware corporation with its headquarters located in North Carolina; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

19.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

20.     Venue is proper because Plaintiff purchased Defendant's product in this district and a substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

21.    Plaintiff Jana Rabinowitz is a citizen and resident of Nassau County, New York.

22.    During the relevant period and throughout the 2025 calendar year, Plaintiff Rabinowitz purchased Defendant's Products multiple times through Defendant's website that possibly contained or had the risk of containing *Salmonella*. Prior to purchasing the Product, Plaintiff Rabinowitz saw the packaging of the Product and reviewed information on Defendant's website concerning its products.

23.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products or pay as much for the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *Salmonella*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### Defendant

24.    Defendant Spring & Mulberry, Inc. is a Delaware corporation with its headquarters and principal place of business located at 2600 Glenwood Ave., Suite 324, Raleigh, North Carolina 27608.

25.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## FACTUAL BACKGROUND

26.     Defendant manufactures, markets, advertises, and sells chocolates it claims are "organic", "safe for heavy metals", and made with "clean ingredients" that are "simply better for you" than traditional chocolates sweetened by "refined sugar or even from the latest fad sugar substitute". Defendant advertises on its website that it follows a "plant-based philosophy rooted in whole, pristine ingredients".[7]

27.     Consumers, such as Plaintiff, have become increasingly concerned about the effects of ingredients in products that are being consumed. Companies, such as Defendant, have capitalized on consumers' desire for healthy food products which promote the wellbeing of the consumer, and indeed, consumers are willing to pay, and have paid, a premium for these products.

28.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Salmonella*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

29.     The Products' packaging does not identify *Salmonella*. Indeed, *Salmonella* is not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *Salmonella* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Salmonella*.

30.     However, the Products contain, or are at risk of containing, *Salmonella*.

31.     Defendant's business is a sophisticated operation that has been in the business of producing, manufacturing, selling, and distributing food products for several years, including producing and manufacturing the contaminated Products.

---

[7] https://www.springandmulberry.com/pages/about (last accessed February 17, 2026).

32.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Salmonella* contamination, as well as the ability to test the Products for *Salmonella* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

33.    Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

34.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

35.    Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Salmonella* are likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiff and the Class Members.

36.    Defendant's misrepresentations and omissions were material and intentional because consumers are concerned with what is in the products that they orally ingest. Consumers such as Plaintiff and the Class Members are influenced by Defendant's marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained *Salmonella*, then Plaintiff and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

37.    Consumers rely on marketing and information in making purchasing decisions.

38.    By omitting that the Products include *Salmonella* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *Salmonella*.

39.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

40.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

41.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *Salmonella* over comparable products not so marketed.

42.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

  a.  Paid a sum of money for Products that were not as Defendant represented;

  b.  Paid a premium price for Products based on Defendant's false and misleading misrepresentations;

  c.  Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

  d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

  e.  Were denied the benefit of the properties of the Products Defendant promised.

11

43.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiff and the Class Members would not have been willing to purchase the Products.

44.    Plaintiff and the Class Members paid for Products that do not contain *Salmonella*. Since the Products do indeed or possibly contain Salmonella, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

45.    Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

46.    Plaintiff and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiff and Class Members known the truth about the Products, i.e., that they do or possibly contain *Salmonella*, they would not have been willing to purchase them at any price, or, at minimum, would have paid less for them.

## CLASS ALLEGATIONS

47.    Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

48.    The proposed Class is defined as follows:

**Nationwide Class:** All persons within the United States who purchased Defendant's affected Products.

**New York subclass:** All persons within the state of New York, who purchased Defendant's affected Products.

49.     Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

50.     *Numerosity:* The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

51.     *Commonality:* Questions of law or fact common to the Class include, without limitation:

a.  Whether the Products in question were unsafe;

b.  Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

c.  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

d.  Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

e.  Whether Defendant had a duty to disclose, prior to purchase, the defective nature of the Products to consumers;

f.  Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public;

g.  Whether Defendant's conduct constitutes an unlawful breach of the implied warranty of merchantability;

h.  Whether Defendant's conduct constitutes an unlawful breach of express warranties;

i.  Whether Defendant's fraudulently omitted material information in its interactions with consumers;

13

    j.   Whether Defendant was unjustly enriched; and

    k.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

52.    *Typicality:* The claims or defenses of Plaintiff are typical of the claims or defenses of the Class. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct, and Class members are entitled to relief under the same legal theories asserted by Plaintiff.

53.    *Adequacy:* Plaintiff will fairly and adequately protect the interests of the proposed Class and has no interests antagonistic to those of the proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions.

54.    *Predominance:* Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant owed a duty to Plaintiff and the Class and whether Defendant breached its duties predominate over individual questions such as measurement of economic damages.

55.    *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits

of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

56.    *Manageability:* Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

57.    The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

58.    The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

59.    Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of New York GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

60.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

62.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

63.     There is no adequate remedy at law.

64.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

65.     Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Salmonella*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

66.     Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

67.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

68.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

69.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory,

treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of New York GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

70.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

72.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . . ."

73.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Salmonella*.

74.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were

mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

75.    Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

76.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

77.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

78.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

79.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

80.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class)**

81.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

82.    The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of *Salmonella* constituted negligence in failing to reasonably act in

accordance with all applicable standards of care. Defendant owed Plaintiff and Class members a duty not to disseminate a materially contaminated, product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *Salmonella* to consumers, including Plaintiff.

83.    Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiff and the Class of the contamination of *Salmonella*, even after Defendant was, or should have been, fully aware of that the Products were contaminated.

84.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

85.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

86.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

87.    Defendant represented to Plaintiff and Class members that its Products were reliable, merchantable, and safe to consume.

88.    The Products to fail to conform to the performance, durability, capability, and reliability that Defendant represented and were therefore of a substantially lesser quality and value than Defendant represented.

89.    Defendant knew or should have known that its Products could not conform to its representations because of the contamination of *Salmonella*.

90.     Defendant mispresented, concealed, and omitted material information concerning the *Salmonella* found in its Products.

91.     The contamination of *Salmonella* and the facts mispresented, concealed, and omitted by Defendant are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Products.

92.     Defendant mispresented, concealed, and omitted material information concerning the contamination of *Salmonella* in order to induce Plaintiff and Class members to purchase their Products at a substantially higher price than what they would otherwise have paid.

93.     Plaintiff and Class members reasonably and justifiably relied on Defendant's representations and advertisements when purchasing the Products.

94.     Plaintiff and Class members would not have purchased the Products if they knew that they were contaminated with *Salmonella*, or they would have only paid substantially less.

95.     Plaintiff and Class members conferred substantial benefits on Defendant by purchasing contaminated Products at a premium without receiving a product that conformed to Defendant's representations.

96.     Defendant knowingly and willingly accepted and enjoyed these benefits.

97.     Defendant's retention of these benefits would be inequitable because Defendant obtained benefits to the detriment of Plaintiff and Class members when Plaintiff and Class members did not obtain their promised benefits.

98.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are entitled to restitution.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (on behalf of Plaintiff and all Class Members)

99.     Plaintiff repeats and re-allege the allegations above as if set forth herein.

100.    The sale of Defendant's Products created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[8]

101.    Defendant, as the manufacturer, marketer, and distributor, impliedly warranted that the Products are merchantable as safe.

102.    Plaintiff and Class Members purchased the Products relying on Defendant's skill and judgment in properly manufacturing, packaging and labeling the Products.

103.    Defendant breached the warranty implied in the contract for the sale of the Products because they could not "pass without objection in the trade under the contract description," the Products were not "of fair average quality within the description," were not "adequately contained, packaged, and labeled as the agreement may require," and did not "conform to the promise or affirmations of fact made on the container or label if any." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiff and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

---

[8] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

104.    Defendant knowingly breached the implied warranties by including *Salmonella* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

105.    Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include *Salmonella* in the ingredients list.

106.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class members have been injured and sustained damages.

107.    Defendant has actual notice of the warranty claims alleged herein due to its recall of the Products.

## **PRAYER FOR RELIEF**

WHEREFORE, the following relief is requested:

    a.    An order certifying this action as a class action.

    b.    An award of statutory, compensatory, incidental, consequential, and punitive damages and restitution to the extent permitted by law in an amount to be proven at trial.

    c.    An order enjoining Defendant's unlawful conduct.

    d.    An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

    e.    An award of interest as provided by law, including pre-judgment and post-judgment interest.

    f.    Such other and further relief as this Court may deem just, equitable, or proper.

Dated: February 17, 2026                    Respectfully submitted

                                    By: /s/ Jason P. Sultzer
                                        Jason P. Sultzer
                                        **SULTZER & LIPARI, PLLC**
                                        85 Civic Center Plaza, Suite 200
                                        Poughkeepsie, NY 12601
                                        Telephone: 845-483-7100
                                        sultzerj@thesultzerlawgroup.com

                                        *Counsel for Plaintiff and Proposed Class*